# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

T-REX PROPERTY AB,

      Plaintiff,

          v.

TABLETOP MEDIA, LLC D/B/A ZIOSK,

      Defendant.

Case No.:  1:16-cv-6932

Judge John Robert Blakey

JURY TRIAL DEMANDED

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS THE COMPLAINT**

## <u>TABLE OF CONTENTS</u>

Introduction ........................................................................................................................... 1

Factual Background .............................................................................................................. 3

    I.   The Inventors & T-Rex ............................................................................................ 3

    II.  The Innovation and Resulting Patents ..................................................................... 3

Argument .............................................................................................................................. 4

    I.   T-Rex's patent claims are valid under § 101 ........................................................... 6

        A.  T-Rex's patent claims are not directed to an abstract idea .......................... 6

        B.  T-Rex's claims add meaningful limitations sufficient to transform an "abstract idea" into patent-eligible claims ................................................................ 10

    II.  T-Rex's Complaint sets forth a plausible claim to relief and thus should not be dismissed under Rule 12(b)(6) ............................................................................ 14

Conclusion ......................................................................................................................... 15

# TABLE OF AUTHORITIES

## Cases

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
  134 S. Ct. 2347 (2015) ................................................................. 2, 5, 6, 9

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................ 14

*BASCOM Global Internet Servs. v. AT&T Mobility LLC*,
  827 F.3d 1341 (Fed. Cir. 2016) ....................................................... 5, 12

*Certified Measurement, LLC v. Centerpoint Energy Houston Elec., LLC*,
  No. 2:14-cv-627, 2015 U.S. Dist. LEXIS 39821 (E.D. Tex. March 29, 2015) ...................... 15

*Chamberlain Grp., Inc. v. Linear LLC*,
  114 F. Supp. 3d 614 (N.D. Ill. 2015) ................................................ 5, 9

*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*,
  776 F.3d 1343 (Fed. Cir. 2014) ............................................................. 11

*Diamond v. Diehr*,
  450 U.S. 175 (1981) ............................................................................... 7

*Digitech Image Techs. v. Electronics for Imaging, Inc.*,
  758 F.3d 1344 (Fed. Cir. 2014) ............................................................... 8

*Elec. Power Grp., LLC v. Alstom S.A.*,
  No. 2015-1778, 2016 U.S. App. LEXIS 13861 (Fed. Cir. Aug. 1, 2016) ...................... 9, 10, 13

*Enfish, LLC v. Microsoft Corp.*,
  822 F.3d 1327 (Fed. Cir. 2016) ........................................................... 7, 8

*In re BRCA1- & BRCA2-Based Hereditary Cancer Test Patent Litig.*,
  774 F.3d 755 (Fed. Cir. 2014) ............................................................... 11

*JSDQ Mesh Techs.*,
  No. 16-cv-212, 2016 U.S. Dist. LEXIS 119811 (D. Del. Sept. 6, 2016) ............................ 5, 14

*Market Track, LLC v. Efficient Collaborative Retail Mktg., LLC*,
  No. 14 C 4957, 2015 U.S. Dist. LEXIS 75916 (N.D. Ill. June 11, 2015) ........................... 5, 12

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
  132 S. Ct. 1289 (2012) ............................................................................ 11

*McRO, Inc. v. Bandai Namco Games Am., Inc.*,
  837 F.3d 1299, 2016 U.S. App. LEXIS 16703 (Fed. Cir. 2016) ................................. 7

*Proto Labs, Inc. v. ICO Prods., LLC*,
　No. 15-cv-2562, 2016 U.S. Dist. LEXIS 126784 (D. Minn. Sept. 16, 2016) ...................... 5, 15

*Vesely v. Armslist LLC*,
　762 F.3d 661 (7th Cir. 2014) ...................................................................................... 5

*Westinghouse v. Boyden Power Brake Co.*,
　170 S. Ct. 537 (1898) .................................................................................................. 8

**Statutes**

35 § U.S.C. 101 ......................................................................................................... 2, 5, 15

## INTRODUCTION

Contrary to the opening and recurring innuendoes in Defendant Tabletop Media, LLC d/b/a Ziosk's Memorandum, Plaintiff T-Rex Property AB is an entity operated by digital-signage pioneers in Sweden, two of whom are named inventors on two of the three asserted patents in this litigation. Going back to the 1990s, the T-Rex inventors developed groundbreaking improvements in this field with specific advantages rooted in digital-signage technology, which they installed, for example, in the London Underground:[1]



When the T-Rex inventors first developed and sold their invention, digital screens and networks were rare and expensive, and so they were the first to develop the modern digital-signage systems claimed by their patents. Today the value of T-Rex's innovations is recognized by almost every major player in digital signage, close to 40 of whom have taken licenses to T-Rex's international patent portfolio, including the patents-in-suit.

---

[1] See, D.I. 1 (Compl.) at ¶¶ 23-24, Ex. D (Hylin Decl.) at ¶¶ 9-11 (T-Rex is successor to the inventors' prior entity DHJ Media AB), Ex. E (Jawadi Decl.) at ¶¶ 16-17 (photo of curved screen installation at test site for London Underground).

1

On July 1, 2016, T-Rex filed a detailed and specific 220-page complaint with exhibits, unlike any that has been the subject of a Rule 12(b)(6) dismissal, alleging that Ziosk has been infringing claims of three of its patents: U.S. Patent Nos. RE 39,470, 7,382,334, and 6,430,603. Incorporated into, and attached to, T-Rex's initial pleading are declarations from one of the inventors, Mats Hylin, and a technical expert, Zaydoon Jawadi, along with additional supporting evidence establishing the significance of the technological innovations and improvements embodied in T-Rex's asserted patents-in-suit. *See* D.I. 1 at ¶¶ 32-33.

In response, without answering the complaint or presenting a shred of contrary fact or expert evidence, Ziosk has moved to dismiss for failure to state a claim under Rule 12(b)(6), based solely on lay attorney argument that every claim of each patent-in-suit covers patent-ineligible subject matter under 35 § U.S.C. 101 and the Supreme Court's *Alice* decision.

Ziosk's motion to dismiss must be denied because (1) the claims are not directed to an abstract idea, but to unique methods of improving digital-display systems with useful advantages over the prior art; (2) the limitations of the claims were not conventional or routine when the patents were filed over twenty years ago, and (3) the claim limitations are arranged in a non-conventional and unique way to provide advantages to advertisers and display owners over the prior art. Even if the Court has any doubts as to the inventiveness of the asserted claims, Ziosk's motion to dismiss should be denied because on a Rule 12(b)(6) motion, the plausible factual allegations of the complaint—which include declarations from inventor Mats Hylin and expert Zaydoon Jawadi explaining in detail the inventive concept of the patents-in-suit and their improvements over the prior art—must be taken as true, and are sufficient to establish patentability under 35 U.S.C. § 101.

## FACTUAL BACKGROUND

### I.     The Inventors & T-Rex

T-Rex is a Swedish company founded by two named inventors of the '470 and '334 Patents, Mats Hyland and Mats Dahlgren. It is the successor in the asserted patent rights to its founders' prior entity, DHJ Media AB, "the first Digital-Out-Of-Home advertising company in the world." D.I. 1, Ex. D (Hylin Decl.) at ¶¶ 4, 9. The inventors are pioneers in the digital-signage space who have developed and demonstrated actual display systems in the London Underground, as well as in airports and other transit environments. *Id.* at ¶ 10.

Contrary to Ziosk's unsupported assertion that the asserted claims "cobble together generic computer components," (D.I. 21 at 1), the inventors developed their claimed system in the mid-1990s, roughly 20 years ago, when no such technology was generic, routine, or conventional at all. Back then, the primary means of distributing advertising was, "physically pasting advertising paper copy on billboards." D.I. 1 at ¶¶ 23-24, 32, 40, Ex. D (Hylin Decl.) at ¶ 8. An unmet need existed amongst advertisers for more speed, flexibility, and the ability to dynamically change the message. D.I. 1 at ¶¶ 23-44, Ex. D (Hylin Decl.) at ¶¶ 8, 11, Ex. E (Jawadi Decl.) at ¶ 16. T-Rex's inventors created specific technological innovations, rooted in evolving digital-signage technology, to overcome problems in this field. D.I. 1, Ex. D (Hylin Decl.) at ¶ 11; Ex. E (Jawadi Decl.) at ¶¶ 16-17.

### II.     The Innovation and Resulting Patents

The first application in the chain leading to the '470 Patent, and then the '334 Patent, was filed abroad on April 26, 1996, followed by a U.S. provisional application on May 14, 1996. D.I. 1, Ex. A & B (providing the '470 Patent and '334 Patent, respectively). Generally "[t]he invention relates to a digital information system for displaying information on at least one display means . . . ." D.I. 1, Exs. A & B at Abstract. The introductory section of each patent elaborates that the

novel system further incorporates a combination of additional physical equipment including: some form of projector, television or camera; external information mediators; communication interfaces for dynamic control; exposure handlers; and networked station computers distributed in conjunction with the display means. The combination amounts to a concrete system, not an abstract idea, which in use allows for the dynamic control of displays, such as advertising, on one or a multiplicity of physical display screens, spread out to reach a selected target audience. D.I. 1, Ex. D (Hylin Decl.) at ¶¶ 8-11; Ex. E (Jawadi Decl.) at ¶¶ 15, 35, 56, 74, 93.

The specification of the T-Rex Patents as well as Mr. Jawadi's declaration explain that the asserted claims were not "routine" or "conventional" in 1996 when the patents were filed. Out-of-home advertising in 1996 was largely static—*e.g.*, boards, posters, etc. D.I. 1, Ex. A ('470 Patent) at 1:27-37. What digital displays did exist had to be controlled centrally, without client access, and even with modern computer technology, these displays included "dead time" due to, among other things, back-logging caused by manual scheduling. *Id.* at 1:42-53. Digital display boards in 1996 were not modern HD displays connected to the Internet; they were the equipment-intensive projector shown on page 1 of this Brief. Each of the asserted claims addressed a technical challenge that was not obvious and not routine using the technology of 1996, and solved problems unique to digital signage in 1996. *See, e.g.,* D.I. 1, Ex. E (Jawadi Decl.) at ¶¶ 22-38 (Claim 25 of the '470 Patent), ¶¶ 39-59 (Claim 26 of the '470 Patent), ¶¶ 60-77 (Claim 22 of the '334 Patent), ¶¶ 78-96 (Claim 32 of the '334 Patent). The '603 Patent, while having a slightly later filing date than the '470 and '334 Patents, also addressed a technical challenge unique to digital signage given the state of the art in 1999. D.I. 1, Ex. E (Jawadi Decl.) at ¶¶ 99-119.

## ARGUMENT

In deciding a motion to dismiss under Rule 12(b)(6), the court must "construe all well-pleaded facts and draw all inferences in the light most favorable to the nonmoving party." *Vesely*

*v. Armslist LLC*, 762 F.3d 661, 664 (7th Cir. 2014). Specifically, in motions to dismiss based on invalidity under 35 U.S.C. § 101, factual allegations about the scope and meaning of the claims must be construed in favor of the nonmovant—here, T-Rex. *See BASCOM Global Internet Servs. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350-51 (Fed. Cir. 2016); *Proto Labs, Inc. v. ICO Prods., LLC*, No. 15-cv-2562, 2016 U.S. Dist. LEXIS 126784, at *14 (D. Minn. Sept. 16, 2016). In addition to the facts directly alleged in the complaint, which here incorporate inventor and expert declarations, "the court may also consider documents attached to the pleading without converting the motion into one for summary judgment." *Chamberlain Grp., Inc. v. Linear LLC*, 114 F. Supp. 3d 614, 621 (N.D. Ill. 2015). "At the motion to dismiss stage a patent claim can be found directed towards patent-ineligible subject matter if the *only* plausible reading of the patent must be that there is clear and convincing evidence of ineligibility." *JSDQ Mesh Techs.*, No. 16-cv-212, 2016 U.S. Dist. LEXIS 119811, at *2 (D. Del. Sept. 6, 2016); *see also Market Track, LLC v. Efficient Collaborative Retail Mktg., LLC*, No. 14 C 4957, 2015 U.S. Dist. LEXIS 75916, at *6 (N.D. Ill. June 11, 2015) ("Patent claims are presumed to be valid under 35 U.S.C. § 282, and § 101 challenges to validity must satisfy a 'clear and convincing' standard.").

Here, T-Rex has provided the Court with a uniquely detailed complaint setting forth exactly how the claimed invention satisfies both steps of the Supreme Court's *Alice v. CLS Bank* framework. The Complaint incorporates in full two declarations that establish the state of the art at the time of the invention in the 1990s, the problem to be solved, and the technical innovations of the invention. Assuming these uncontested facts in the pleadings to be true, and construing all reasonable inferences in favor of T-Rex, the Court must find that the presumed-valid claims of the patents-in-suit relate to patent eligible subject matter under section 101.

## I.      T-Rex's patent claims are valid under § 101

The Supreme Court in *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2015), laid out a two-step analysis, since memorized by everyone in patent law: **Step 1**, determine whether the claims at issue are directed to a patent-ineligible abstract idea; and **Step 2**, if so, evaluate the elements of each claim— both individually and as an ordered combination—to assess whether the additional elements transform the nature of the claims into patent-eligible applications of that abstract idea. Step 2, in particular, must view what is "conventional," "known," or "generic" **at the time of the invention** (here twenty years ago), not today. *See infra* at I.B.1. The claims of T-Rex's patents-in-suit are not limited to merely an abstract idea; and even if they were held so limited, they would satisfy step two of the analysis by requiring additional elements to preserve their validity.

### A.      T-Rex's patent claims are not directed to an abstract idea

T-Rex's patent claims do not become abstract ideas merely because Ziosk calls them an "abstract idea." For example, Claim 26 of the '470 Patent recites:

(1) "a computerized control center"

(2) "having a plurality of communication interfaces for receiving control instructions from at least one external information mediator,"

(3) "said computerized control center including means for generating and dynamically updating an exposure list from said control instructions,"

(4) "said exposure list specifying three or more of the following items: i) what information content is to be displayed; ii) at which of said plurality of locations said information content is to be displayed; and iv) how long said information content is to be displayed for each location at which it is to be displayed;

(5) "a computerized device situated at each one of said plurality of locations, each computerized device being electronically coupled to said computerized control center; and

(6) "a means for displaying images in accordance with said exposure list assocaited [sic] with each one of said computerized devices."

D.I. 1, Ex. A ('470 Patent) at 17:26-18:26. Ziosk attempts to re-write this claim as "directed to the concept of collecting display instructions from a third party [], organizing the display content at a central computer, and then displaying the content on conventional electronic displays." D.I. 21 at 12. Ziosk's description leaves out key elements of the claim, such as the requirement that the control center be able to generate an "exposure list" from the separate control instructions, that it be able to "dynamically update" the exposure list (so that clients can update advertisements without waiting for a cycle to end), that the exposure list is defined to include specific types of information for use with a multiple display system, that computerized devices be situated at each display location, and that the displays show images according to the exposure list. Plainly, if a company were only performing Ziosk's example of an airline displaying arrival and departure times on an arrival board (D.I. 21 at 12), T-Rex would not have enough information to know whether that airline was infringing.

The Federal Circuit has explicitly and repeatedly instructed courts not to rewrite claims to find abstract ideas. *See, e.g., Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016); *McRO, Inc. v. Bandai Namco Games Am., Inc.*, 837 F.3d 1299, 2016 U.S. App. LEXIS 16703, at *24-*25 (Fed. Cir. 2016); *cf. Diamond v. Diehr*, 450 U.S. 175, 189 n. 12 (1981) (overgeneralizing claims, "if carried to its extreme, make[s] all inventions unpatentable because all inventions can be reduced to underlying principles of nature which, once known, make their implementation obvious."). In *Enfish*, the district court found that software algorithm claims to self-referential tables were "directed simply to 'the concept of organizing information using tabular formats.'" 822 F.3d at 1337. The Federal Circuit reversed, holding that the district court's characterization of the claim "oversimplified the self-referential component of the claims and downplayed the invention's benefits." *Id.* at 1338. Similarly here, Ziosk oversimplifies the claims to exclude key

7

elements of the invention—*e.g.*, that it allows for dynamic updating and for external mediators (*i.e.*, advertisers) to perform the updating.

Also, as in *Enfish*, the specification of T-Rex's patents explains that the elements of the invention that Ziosk's oversimplified "abstract idea" leaves out were not available in the prior art, and solved problems created by prior art systems. The *Enfish* court's conclusion that the claims were not directed to an abstract idea "is bolstered by the specification's teachings that the claimed invention achieves other benefits over conventional databases, such as increased flexibility, faster search times, and smaller memory requirements." *Enfish*, 822 F.3d at 1337. The T-Rex Patents' specifications similarly describe the key elements of dynamic updating and external mediator access as deficiencies in the prior art solved by the invention:

> [P]resent-day systems do not enable information to be updated dynamically for display in real time. Neither do present-day systems enable external mediators to update information for display in a central control system, nor yet the administrator who makes the display of information available, but that it is the administrator who determines when, where and how the information shall be displayed.

D.I. 1, Ex. A ('470 Patent) at 1:54-60.

T-Rex's claims are also patentable as a machine under section 101. "To qualify as a machine under section 101, the claimed invention must be a 'concrete thing, consisting of parts, or of certain devices and combinations of devices.'" *See Digitech Image Techs. v. Electronics for Imaging, Inc.*, 758 F.3d 1344, 1348-49 (Fed. Cir. 2014); *see also Westinghouse v. Boyden Power Brake Co.*, 170 S. Ct. 537, 556 (1898) ("A machine is a concrete thing, consisting of parts, or of certain devices and combinations of devices."). T-Rex's claimed inventions are such "concrete thing[s]." Both the system and method claims of each patent relate to (quoting '334 Patent, claim 22,) "coordinating and controlling electronic displays," the end result of which is the actual display in the physical world of a targeted message to a specified physical audience on one or more electronic displays. D.I. 1, Ex. E (Jawadi Decl.) at ¶¶ 28-32, 35, 62, 67-71, 74, 84-88, 93, 100,

102-105, 112, 115-117. The patents describe, and system claim 32 of the '334 Patent, for example, requires specific interconnected hardware and software such as "computerized control center means," and "exposure handler means," along with the actual physical display screens themselves. D.I. 1, Ex. E (Jawadi Decl.) at ¶ 79. In the '470 Patent, system claim 26 drops the "means" language and requires "a computerized control center," plus a separate connected "computerized device situated at each" location where a physical sign is coordinated and controlled to physically display information. D.I. 1, Ex. E (Jawadi Decl.) at ¶ 40. The '603 Patent similarly claims a geographically dispersed network of digital signage, interconnected with concrete transmission means, and claims 42 and 43 add the coordinated scheduling of distinct splitscreen images and real time video. D.I. 1, Ex. E (Jawadi Decl.) at ¶¶ 100, 112.

T-Rex's claims are also similar to the claims held valid by this Court in *Chamberlain Group*. There, the claims were directed to a system that used a computer network to facilitate communication between a controller and a movable barrier such as a garage door. *Chamberlain Grp.*, 114 F. Supp. 3d at 625. This Court held that the claims in *Chamberlain Group* were not directed to an abstract idea because they have a "concrete and tangible form"—they did not claim only manipulation of data, but claimed a tangible output, namely the opening and closing of a door. *Id.* If using a network to control the opening and closing of a door is not an abstract idea, then using a network to control the display of advertisements remotely, using a particular network architecture that provides distinct advantages to users over the prior art, is not an abstract idea.

In contrast, the claims invalidated in the one case other than *Alice* that Ziosk cites in its discussion of *Alice* step 1—*Elec. Power Grp., LLC v. Alstom S.A.*, No. 2015-1778, 2016 U.S. App. LEXIS 13861 (Fed. Cir. Aug. 1, 2016) (cited by D.I. 21 at 12)—issued substantially later and were directed only to an algorithm performed on a single computer with no tangible output. The three

9

patents addressed in that case all relate to an earliest filing date of August 8, 2003, seven-and-a-half years later. Unlike here, in contrast to T-Rex's asserted system claims, the sole representative claim was a method claim, claim 12 of U.S. Patent No. 8,401,710. *See id.* at *2. Tellingly, Ziosk fails to acknowledge that the claimed method in *Electric Power* is simply an algorithm performed on a single generic computer. *See id.* at *2-*4. The invalidated claims in *Electric Power* did not relate to a concrete system of networked components, including geographically distributed displays, like the claimed system of the T-Rex Patents. *See id.* Nothing in the *Electric Power* case can be read to support invalidating T-Rex's claims to a more complex and concrete system invented nearly a decade earlier.

**B.    T-Rex's claims add meaningful limitations sufficient to transform an "abstract idea" into patent-eligible claims**

If this Court disagrees with T-Rex on **Step 1**, then for **Step 2** the Court must ascertain whether the claims of the '470, '334, and '603 Patents contain meaningful limitations that transform the abstract idea found into a patent-eligible invention. Or in the alternative, the Court must decide whether claim construction would be required to make that determination. Ziosk's Motion to Dismiss should be denied both because it fails to take into account the correct timeframe in finding limitations "conventional," and because the uncontested evidence establishes the innovative transformation over the prior art in the relevant field of the asserted claims.

**1.    The Court is required to analyze the second step of *Alice* as of the time of invention, not today**

Ziosk's repeated assertions (without evidence) that T-Rex's patent claims recite "conventional computer functionality" are incorrect because the claims do not recite conventional computer functionality **in 1996**, when the patents were filed.

The analysis of what is generic, routine, or purely conventional, must be conducted from the perspective of the time of filing (or time of invention, if established). The Supreme Court held

in *Alice* that claim limitations would not transform an abstract idea into a patent-eligible invention if those claim limitations were directed to "'well-understood, routine conventional activities' **previously known to the industry**." 134 S. Ct. at 2359 (emphasis added) (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1298 (2012)). The Federal Circuit, applying *Alice* and *Mayo*, quoted the same "previously known to the industry" language, and then explained that a claim limitation at issue does not transform the claim into a patent-eligible invention because it "was well-known at the time of filing." *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1348 (Fed. Cir. 2014); *see also In re BRCA1- & BRCA2-Based Hereditary Cancer Test Patent Litig.*, 774 F.3d 755, 764 (Fed. Cir. 2014) (claim limitations "set forth well-understood, routine and conventional activity engaged in by scientists at the time of Myriad's patent applications.").

T-Rex's technology itself perfectly illustrates the absurdity of assessing whether a claim limitation is "conventional" as of the date of litigation rather than the date of filing. The picture on the first page of this Brief is worth a thousand words; when Mr. Hylin and his co-inventor first invented and sold this technology, digital signage was not conventional in the least. Since 1996, wireless networks and LCD displays have become so cheap and ubiquitous that chain restaurants using Ziosk's products can put a tablet on every table, but in 1996, it took a large projector hard-wired to a much lower bandwidth network using far less powerful computers to implement digital out-of-home advertising. T-Rex was the pioneer in this field, and it is only because the technology has been commercially successful that it now may appear to a layperson in hindsight to be conventional. A novel, non-obvious claim to a unique, unconventional combination of technology cannot become an unpatentable abstract idea simply because it becomes so successful that it later appears in hindsight to be conventional.

11

Ziosk does not, and cannot now at this stage, offer any competing evidence or testimony regarding what was conventional, generic, or otherwise already known in the art in the mid-1990s—20 years ago—at time of filing for T-Rex's patents; it merely asserts that the technology is conventional. *See* D.I. 21 at 13-15. That is when the "innovative concept" and "transformation" must be judged. Ziosk's unsubstantiated attorney argument that aspects of T-Rex's claimed invention are generic or conventional today, without evidence of the state of the art in 1996 (or 1999 for the '603 Patent), cannot meet its burden to prove invalidity by clear and convincing evidence. *See, e.g., Market Track*, 2015 U.S. Dist. LEXIS 75916, at *6.

## 2. The asserted claims add meaningful limitations sufficient to make them patent-eligible

Even if the Court finds that the asserted claims are directed to an abstract idea and that the individual components recited by the claims were conventional in the 1990s, the claims nonetheless recite an unconventional "ordered combination" of elements sufficient to establish patent-eligibility. The Federal Circuit held such an ordered combination of conventional elements to be a sufficient inventive concept under step 2 of an *Alice* analysis in *BASCOM*. The patent in *BASCOM*, filed in 1997, claimed a system for filtering out unsuitable content over the Internet. 827 F.3d at 1343. The Federal Circuit noted that the limitations of the claim, which recited a "local client computer," a "remote ISP server," an "Internet computer network," and "controlled access network accounts," taken individually, each recited generic computer components. *Id.* at 1349. However, the Federal Circuit reversed the district court's finding of invalidity for lack of patentable subject matter because the arrangement of conventional elements was "non-conventional and non-generic." *Id.* at 1350. Even though filtering content on the Internet was a known concept, the claims described an improved filter implementation that did not pre-empt

12

content filtering generally, and provided substantial improvements over the prior art. *Id.* at 1350-51.

Even if the Court finds that the T-Rex patent claims use conventional computer components and displays, the arrangement of those components was not conventional in 1996, does not preempt all digital out-of-home advertising, and provides substantial improvements over prior art advertising techniques. T-Rex's invention arose in a specialized context, hampered in a particular field by "imperfect automation"—back in 1996—and the inventors came up with a specific solution, manifested in a concrete combination of devices, interfaces, and software, networked together with physical displays viewable by the target audience, to resolve particular problems. D.I. 1, Ex. D (Hylin Decl.) at ¶ 11; Ex. E (Jawadi Decl.) at ¶¶ 22-32, 41-51, 63-72, 80-89, 101-106, 113-117. The written descriptions of the resulting '470, '334, and '603 Patents lay out myriad inadequacies—at that time—in the way advertisements and certain other information could be presented to the public: lack of coordination, inability to control items individually, "dead time" in a non-dynamic process, among other concerns. *See* D.I. 1, Ex. A ('470 Patent) at 1:27-2:36; Ex. B ('334 Patent) at 1:27-2:52; Ex. C ('603 Patent) at 1:27-53. Applying hindsight today, as Ziosk does in its argument, to suggest that each isolated piece of the claimed solution was somehow known or conventional in some individual sense, is utterly irrelevant—and at best an obviousness argument for another day.

Ziosk does not offer any argument that the ordered combination of elements of T-Rex's patent claims is not inventive; it simply asserts that the combination "is claimed only in generic and conventional terms" with a citation to the *Electric Power Group* decision. D.I. 21 at 15. But the Federal Circuit distinguished the claims it found unpatentable in *Electric Power Group* from the claims it found patentable in *BASCOM*, explaining that in *BASCOM* the claims required "an

arguably inventive distribution of functionality within a network," and "the installation of a filtering tool at a specific location, remote from the endusers, with customizable filtering features specific to each end user." *Elec. Power Grp.*, 830 F.3d at 1355-56. The T-Rex asserted claims feature the same inventive distribution of functionality within a network, requiring an external information mediator to provide control instructions, a computerized control center that can generate and dynamically update an exposure list from control instructions, and computerized devices situated at each location to run displays at each location. *See* D.I. 1, Ex. A ('470 Patent) at 17:6-18:26; D.I. 2, Ex. B ('334 Patent) at 18:5-24, 18:62-19:18). Claims of the '603 Patent include similar limitations uniquely arranging scheduling of displays, requiring that a network connect a plurality of displays "provided at various geographic locations," and that content be scheduled "at selected time slots on selected electronic displays." *See* D.I. 1, Ex. C ('603 Patent) at 1:27-53, 8:47-62. The specification of the '603 Patent explains that this combination was unique: "there is no electronic billboard network in operation whereby commercial advertisers may directly place ads onto selected billboards at selected times through direct access to a master network." D.I. 1, Ex. C ('603 Patent) at 1:55-59.

## II.     T-Rex's Complaint sets forth a plausible claim to relief and thus should not be dismissed under Rule 12(b)(6)

The Supreme Court has emphasized that, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *see also JSDQ Mesh Techs.*, 2016 U.S. Dist. LEXIS 119811, at *2. T-Rex's Complaint, in context, with all of the uncontested facts taken as true, and with all inferences in T-Rex's favor, sets forth at minimum a plausible claim that Ziosk is infringing presumptively-valid patent claims, and thus Ziosk's Motion to Dismiss should be denied. Courts have generally disfavored prematurely

14

dismissing patent complaints for failure to state a claim on the grounds of purported patent-ineligibility under § 101. *See, e.g., Proto Labs*, 2016 U.S. Dist. LEXIS 126784, at *14-*15, *25. In its *Certified Measurement* decision, for example, the Eastern District of Texas cogently noted that, in a routine Rule 12(b)(6) scenario, "[t]he difficulty of making a substantive ruling on the validity of an issued patent in what is—in essence—a complete vacuum cannot be understated." *Certified Measurement, LLC v. Centerpoint Energy Houston Elec., LLC*, No. 2:14-cv-627, 2015 U.S. Dist. LEXIS 39821, at *5 (E.D. Tex. March 29, 2015). In this matter, however, T-Rex has provided the Court with far more than a routine record to review. Here, not only should the Court deny Ziosk's Motion to Dismiss, but given the extensive evidence and expert testimony submitted, and Defendant's decision to proceed under Rule 12, rather than even attempting to contest any of that voluminous support, the Court should apply its experience and common sense to decide that the claims of T-Rex's Patents are directed to patent-eligible subject matter under 35 U.S.C. § 101 and the relevant caselaw.

## CONCLUSION

For all of the reasons set forth above, T-Rex respectfully asks that the Court rule that the claims of T-Rex's asserted '470 Patent, '334 Patent, and '603 Patent properly claim patent-eligible subject matter under 35 U.S.C. § 101, and deny with prejudice Ziosk's Motion to Dismiss. In the alternative, T-Rex submits that the Court should deny this Rule 12(b)(6) motion at least because T-Rex's Complaint sets forth a plausible claim for relief at the pleading stage. Lastly, if any aspect of the inquiry is found to be insufficiently established or documented, in the interests of justice T-Rex should be given the opportunity to file an amended complaint to address any deficiency.

Dated:  November 30, 2016

Respectfully submitted,

*/s/ William Cory Spence*

William Cory Spence
Jacob Robert Graham
SPENCE, P.C.
405 N. Wabash Ave., Suite P2E
Chicago, Illinois 60611
312-404-8882
William.Spence@spencepc.com
Jacob.Graham@spencepc.com
*Counsel for Plaintiff*
*T-Rex Property AB*

16

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document and attachment was served upon counsel

of record on November 30, 2016, by filing this document using the CM/ECF system.


/s/ *William Cory Spence*
William Cory Spence