IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| T-REX PROPERTY AB, | § § § | |
| *Plaintiff*, | § § | Civil Action No. 1:16-cv-06932 |
| v. | § § | **JURY TRIAL DEMANDED** |
| TABLETOP MEDIA, LLC d/b/a ZIOSK, | § § § | |
| *Defendant*. | § | |

**ZIOSK'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS
PLAINTIFF'S COMPLAINT PURSUANT TO RULE 12(b)(6)**

The challenged patents cover only the abstract idea of collecting display instructions from external content providers, organizing the display content at a central computer, and then displaying the content on electronic displays. Nothing in the elements of the challenged claims supplies an "inventive concept" sufficient to confer patentability on that otherwise unpatentable abstract idea. Even when pressed to describe the inventive aspect of U.S. Patent No. RE39,470 (the "'470 patent"), U.S. Patent No. 7,382,334 (the "'334 patent"), and U.S. Patent No. 6,430,603 (together, the "challenged patents"), T-Rex struggles to identify anything other than generic computer components and conventional data collection and processing steps. T-Rex is unable to confront Ziosk's showing that the challenged patents are, at bottom, claiming precisely the sort of abstract idea that the Federal Circuit has repeatedly found to be patent ineligible. As set forth in Ziosk's opening brief and below, the challenged patents claim ineligible subject matter. When, like here, there is no plausible reading of a patent that would enable it to satisfy the threshold inquiry under § 101, an early Rule 12(b)(6) dismissal is appropriate.

A.      **T-Rex's conclusory allegations cannot survive Ziosk's motion to dismiss.**

T-Rex's self-proclaimed "uniquely detailed complaint" cannot escape the conclusion that the challenged patents are directed to patent-ineligible subject matter. Whether a claim is ineligible for patentability under § 101 is a question of law that can be decided on the pleadings. After *Alice*, courts have frequently decided questions of patent eligibility on the pleadings. *See, e.g., Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1347, 1349 (Fed. Cir. 2014) (holding that district court properly resolved defendant's motion to dismiss at the pleadings stage, where it was clear that the patent claims were directed to ineligible subject matter, even when construed in a light most favorable to the patentee); *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1351 (Fed. Cir. 2014) (affirming district court's conclusion on a motion for judgment on the pleadings that the asserted claims were invalid because they covered ineligible subject matter).

T-Rex's Complaint includes a 91-page declaration of Zaydoon Jawadi, who conclusorily opines that the claims of the challenged patents "impose[] meaningful limitations to improve existing digital signage" that "necessarily are rooted in and require computer technology," and an 8-page declaration of Mats Hylin, who baldly asserts that the "system . . . invented . . . improved the function of digital signage." (*See, e.g.*, Doc. 1-5, Ex. E ¶¶ 27, 29; *id.* Ex. D ¶ 11.) But Jawadi and Hylin fail to identify any non-generic computer components, non-generic programming, or non-generic configuration required to implement the purported "inventions," much less any unconventional use of the claimed generic components. Moreover, like the specifications, Jawadi acknowledges that "control and coordination of content" of digital signage was previously performed "manually." (Doc. 1-5, Ex. E ¶¶ 24, 25; *see id.* Ex. D ¶ 8 ("I was responsible for over 1,500 employees, many of them working with production materials by physically pasting

advertising paper copy on billboards.").) And, while T-Rex states in passing that, "if this Court disagrees with T-Rex on Step 1 [and Step 2 of *Alice*]," it "must decide whether claim construction would be required to make that determination," (Opp. at 10), neither T-Rex nor the declarants have pointed to a single claim term upon which the § 101 analysis should turn. As a result, T-Rex's statement that claim construction is necessary falls flat.

Moreover, neither the Complaint nor the declarants allege any fact that refutes the reality that all the challenged patents do is substitute manual "control and coordination" of digital signage systems with standard off-the shelf components, including a computer and a modem, to process a basic set of instructions more efficiently. But claiming the improved speed or efficiency inherent on a computer does not provide a sufficient inventive concept. *See Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Can. (U.S.)*, 687 F.3d 1266, 1278 (Fed. Cir. 2012) (performing a task more efficiently does not materially alter patent eligibility). Therefore, while T-Rex contends that certain facts relating to Jawadi's declaration must be inferred in its favor, T-Rex has not shown how those facts would change the § 101 legal analysis. Moreover, T-Rex's assertion that the Court must accept Jawadi and Hylin's conclusions as true is contrary to established law. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). As one court recently explained, "[r]equiring the Court to accept such facts or legal conclusions (even in the form of an early expert declaration) would permit any plaintiff to circumvent the § 101 inquiry on an early motion to dismiss or motion for judgment on the pleadings simply by including a few lines attesting to the novelty of the invention." *Appistry, Inc. v. Amazon.com, Inc.*, No. C15-1416RAJ, 2016 U.S. Dist. LEXIS 94167, at *6, n.6 (W.D. Wash. July 19, 2016).

B.     **There is no plausible reading of the claims that can save them from abstractness.**

Step 1 of the two-part *Alice* test is to determine whether the claims are directed to a patent-ineligible concept such as an abstract idea. *See Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014). The challenged patents are, at their core, about gathering, manipulating, and outputting data—precisely the type of patents that have been invalidated over and over by courts. *See In re TLI Comm'ns LLC Patent Litig.*, 823 F.3d 607 (Fed. Cir. 2016); *Content Extraction*, 776 F.3d 1343; *Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.*, 558 F. App'x 988 (Fed. Cir. 2014); *Compression Tech. Sols. LLC v. EMC Corp.*, No. C-12-01746 RMW, 2013 U.S. Dist. LEXIS 78338 (N.D. Cal. May 29, 2013), *aff'd*, 557 F. App'x 1001 (Fed. Cir. 2014).

For a recent example, take *Mobile Telecommunications Techs., LLC v. Blackberry Corp.*, No. 3:12-CV-1652-M, 2016 U.S. Dist. LEXIS 63067, at *1 (N.D. Tex. May 12, 2016) (Lynn, C.J.). There, U.S. Patent No. 5,809,428 ("'428") claimed:

> 8. In a two-way wireless communications system, a method of processing data messages that cannot be successfully transmitted from a network operations center to a wireless mobile unit comprising the steps of:
> (a) transmitting a data message from the network operations center to the mobile unit;
> (b) receiving at the network operations center a data acknowledgment message from the mobile unit acknowledging receipt of the data message sent by the network operations center;
> (c) transmitting a probe message from the network operations center to the mobile unit if, after transmitting a data message to the mobile unit, no data acknowledgment message is received at the network operations center;
> (d) marking at the network operations center a data message as undelivered if, after transmitting a probe message to the mobile unit, no probe acknowledgment message is received at the network operations center; and
> (e) storing at the network operations center the undelivered data message.

'428, Claim 8, available at http://www.google.com/patents/US5809428. The district court found that the claims were "directed to the basic idea of sending and storing messages." *Mobile Telecom.*, 2016 U.S. Dist. LEXIS 63067, at *8. Similarly, T-Rex's patents claim the abstract idea of collecting display instructions from external content providers, organizing the display content

4

at a central computer, and then displaying the content on electronic displays. T-Rex does not seriously dispute this, instead pointing only to limitations amounting to insignificant post-solution activity. *See In re Bilski*, 545 F.3d 943, 957 (Fed. Cir. 2008).

T-Rex in fact strains to fit its alleged invention into the framework of *Enfish , LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016), which suggests that patentable subject matter may exist where the "plain focus of the claims is on an improvement to the computer functionality itself, not on economic or other tasks for which a computer is used in its ordinary capacity." *Enfish*, 822 F.3d at 1336. T-Rex argues that, "as in *Enfish*, the specification of T-Rex's patents explains that the elements of the invention . . . were not available in the prior art, and solved problems created by prior art systems." (Opp. at 8.) According to T-Rex, the challenged patents' "specifications similarly describe the key elements of dynamic updating and external mediator access as deficiencies in the prior art solved by the invention." (*Id.*) But even accepting all of that as true, a network system designed to communicate with an electronic display hardly constitutes "improvement to the computer functionality itself" of the sort contemplated in *Enfish*. There, the Federal Circuit held that a patent directed to a new way of storing data in a computer produced a "specific improvement to the way computers operate." *Enfish*, 822 F.3d at 1336. Not so here. A computer that communicates over a network with an electronic display is not inventive. Nor could T-Rex suggest otherwise.

Importantly, *In re TLI*—which issued just days after *Enfish* and was also authored by Judge Hughes—clarified that *Enfish* was not intended to advance protection for "the use of conventional and generic technology in a nascent but well-known environment, without any claim that the invention reflects an inventive solution to any problem presented by combining the two." *In re TLI*, 823 F.3d 607 at 612. T-Rex does not argue that its patents purport to overcome

5

any inherent difficulty in combining known hardware and software. Instead, like the patent in *In re TLI*, the specification here describes functionality using existing components but otherwise "fails to provide any technical details for the tangible components" and "instead predominately describes the system and methods in purely functional terms." *Id.*

T-Rex contends that its "claims are also patentable as a machine under section 101." (Opp. at 8.) T-Rex further contends that claims to "a concrete thing, consisting of parts, or of certain devices and combinations of devices" do not fall into the abstract idea exception. (*Id.*) The either/or dichotomy advanced by T-Rex is not supported by the case law. As *Alice* itself provides, "[t]he fact that a computer necessarily exist[s] in the physical, rather than purely conceptual, realm . . . is beside the point." *Alice*, 134 S. Ct. at 2358. That basic proposition has been restated and repeated in numerous cases that have found the mere recitation of tangible components insufficient to save the claims from abstractness. *See Affinity Labs of Texas, LLC v. Amazon.com, Inc.*, 838 F.3d 1266, 1269 (Fed. Cir. 2016) ("'not every claim that recites concrete, tangible components escapes the reach of the abstract-idea inquiry'") (quoting *In re TLI*, 823 F.3d at 612); *see also Wireless Media Innovations, LLC v. Maher Terminals, LLC*, 100 F. Supp. 3d 405, 413 (D.N.J. Apr. 20, 2015) ("Plaintiff's arguments that the patent claims are not abstract because they require physical steps and include the use of tangible components is beside the point[.]"), *aff'd*, 636 Fed. Appx. 1014 (Fed. Cir. 2016).[1]

Moreover, components such as "computerized control center means" and "exposure handler means" cited by T-Rex (Opp. at 9), which are described in functional terms, only confirm that the claims are "directed to an abstract idea, not to a concrete embodiment of that

---

[1] T-Rex's mischaracterization of *Digitech Image Techs. v. Electronics for Imaging, Inc.*, 758 F.3d 1344, 1348-49 (Fed. Cir. 2014), as supporting the contrary proposition (Opp. at 8) should be disregarded. The cited passage merely defines what qualifies as a "machine" under § 101.

idea." *Affinity Labs*, 838 F.3d at 1270. Similarly, the fact that the method claims employ language associated with computers (such as "control instructions" or "control center") does not alter the fundamentally abstract nature of those claims. *See OIP Techs., Inc., v. Amazon.com, Inc.*, 788 F.3d 1359, 1364 (Fed. Cir. 2015) (computerized methods for pricing a product for sale were abstract); *Bancorp Servs.*, 687 F.3d at 1281 (computerized methods and systems for managing life insurance policies were abstract); *Intellectual Ventures I v. Capital One Bank (USA)*, 792 F.3d 1363, 1371 (Fed. Cir. 2015) (computerized methods for communicating information to a user based at least in part on the user profile were abstract); *Potter Voice Techs., LLC v. Apple Inc.*, No. C13-1710, 2015 U.S. Dist. LEXIS 133272, at *4 (N.D. Cal. June 11, 2015) (computerized methods and systems for determining information in response to a spoken query were abstract); *Content Extraction*, 776 F.3d at 1351 (computerized methods for recognizing scanned data from documents were abstract). Put another way, "'[a]bstract methods do not become patent-eligible machines by being clothed in computer language.'" *Proto Labs, Inc. v ICO Products, LLC*, No. 15-2562, 2016 U.S. Dist. LEXIS 111963, at *66 (D. Mn. July 13, 2016) (quoting *CLS Bank Int'l v. Alice Corp. Pty.*, 717 F.3d 1269, 1292 (Fed. Cir. 2013)) (finding claims to automated quotation process patent-ineligible under Alice); *see also Elec. Power Grp., LLC v. Alstom S.A.*, No. CV12-06365, 2015 U.S. Dist. LEXIS 67232, at *9 (C.D. Cal. May 21, 2015) (finding method of "receiving data" streams and detecting and analyzing events from them to be patent-ineligible abstract idea).

The asserted method claims here are still directed to an abstract idea—collecting display instructions from external content providers, organizing the display content at a central computer, and then displaying the content on conventional electronic displays—regardless of whether they are "clothed in" computer language. The challenged patents' written descriptions

7

themselves confirm the abstract nature of the claimed inventions. *See, e.g.,* '470 patent, 2:57 to 3:5 ("the present invention relates to a method of coordinating and controlling projectors . . . [whereby] [i]nformation display subscribers are connected to a computerized control centre [sic] via computer and telecommunication interfaces . . . wherein the control centre [sic] has a communication interface with computer devices situated in connection with said places for projector coordination and control . . . [and] is able to create and update a display list in real time with control instruction fields[.]"). Indeed, by mimicking these descriptions of the alleged inventions in its Complaint and accompanying declarations (*see, e.g.,* Doc. 1 ("Compl."), ¶¶ 10, 16, 33, 59; *id.* ¶ 11 (listing generic components)), T-Rex's own pleadings underscore that the claims are directed to an abstract idea. *In re TLI*, 823 F.3d at 612 ("TLI's characterization of the claimed invention also supports our conclusion at step one. In its briefs, TLI essentially parrots the disclosure of the '295 patent, asserting that claim 17 is 'directed to a method for recording and administering digital images.'").

Finally, T-Rex contends that the claims are not abstract because they recite functions (such as coordinating and controlling electronic displays) "*the end result* of which is the actual display in the physical world of a targeted message to a specified physical audience on one or more electronic displays." (Opp. at 8 (emphasis added).) This contention evinces a complete misapprehension of the law. Whether the patent produces a concrete result is decidedly not the test for patentability under § 101. *See Bilski v. Kappos*, 561 U.S. 593, 616-17 (2010) (Stevens, Ginsburg, Breyer, Sotomayor, JJ., concurring in the judgment) (noting with approval that "Chief Judge Michel's opinion [in the Federal Circuit *en banc* decision], joined by eight other judges, rejected several possible tests for what is a patent-eligible process, including whether the patent produces a 'useful, concrete and tangible result'"); *id.* at 659-60 (Breyer, Scalia, JJ., concurring

in the judgment) ("[A]lthough the machine-or-transformation test is not the only test for patentability, this by no means indicates that anything which produces a 'useful, concrete, and tangible result,' is patentable. '[T]his Court has never made such a statement and, if taken literally, the statement would cover instances where this Court has held the contrary.'") (internal citations omitted); *see also Cloud Satchel, LLC v. Amazon.com, Inc.*, 76 F. Supp. 3d 553, 564 (D. Del. 2014) ("The fact that an abstract idea may be usefully applied, however, is not enough to 'transform an unpatentable principle into a patentable process.'") (quoting *Parker v. Flook*, 437 U.S. 584, 590 (1978)), *aff'd*, 626 Fed. Appx. 1010 (Fed. Cir. 2015).[2]

Lest there be doubt, it is not as if any of the individual processes claimed in the challenged claims are unique or represent a breakthrough in improving how a computer works. No one is claiming that any part of collecting display instructions from external content providers, organizing the display content at a central computer, and then displaying the content on electronic displays, is novel. T-Rex admits that the challenged patents streamline a workflow where people had previously manually completed all of these tasks over a much longer span of time using the previously utilized method. (*See* Doc. 1-5, Ex. E ¶¶ 24, 25; *see id.* Ex. D ¶ 8.) Simply put, T-Rex fails to explain why its alleged invention does more than merely streamline known tasks with the use of existing computers and software.

**C.      T-Rex fails to identify any claim elements that meaningfully limit the claims' core abstract idea.**

Step 2 of *Alice* provides that if the challenged claims are directed to an abstract idea, the Court next must determine whether there is an "inventive concept" by "consider[ing] the

---

[2] T-Rex's argument about the alleged novelty of the claimed inventions (Opp. at 11) is also legally misguided. Novelty is of "'no relevance'" to the § 101 analysis. *Intellectual Ventures*, 838 F.3d at 1315 (quoting *Diamond v. Diehr*, 450 U.S. 175, 188-89 (1981)) (affirming grant of post-trial motion of unpatentability despite jury finding that patents were not invalid as anticipated or obvious).

elements of each claim both individually and as an 'ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Alice*, 134 S. Ct. at 2355. This requirement cannot be circumvented by limiting the use of the abstract idea to a particular technological environment or hardware, because such limitations are "insignificant postsolution activity" which do not transform the claims into patentable ones. *See In re Bilski*, 545 F.3d at 957. T-Rex's arguments on Step 2 fare no better than those on Step 1.

Ziosk's opening brief showed how the claimed method steps of receiving, generating, displaying, and updating display content are steps that can be performed by any general purpose computer and as such are not transformative under *Alice*. (Ziosk Mem. at 13-14.) Similarly, the system claims recite generic components (such as "computerized control centers," "electronic displays" and "communication interfaces") that plainly do not qualify as transformative. (*Id.* at 14.)

T-Rex does not rebut any of this description of the claims, nor can it, as it is wholly accurate. Instead, T-Rex makes two arguments in order to distract from any serious debate about specific claim limitations that might potentially qualify under *Alice* step two.

T-Rex contends that the challenged patents date to the mid-1990s and that this is the time from which the innovative concept and transformation must be judged. (See Opp. at 10-12.) This argument is misguided. While T-Rex is correct that what is routine or conventional activity must be adjudged from the time of the patent filing, T-Rex incorrectly articulates the exercise as involving determining whether there is "transformation *over the prior art*." (Opp. at 10 (emphasis added). This improperly mixes § 101 law with the law of obviousness and anticipation. Thus, for example, in the recent *Intellectual Ventures* case, the Federal Circuit affirmed the grant of a post-trial motion of unpatentability despite a jury finding that the patents

10

were not invalid as anticipated or obvious. *Intellectual Ventures*, 838 F.3d at 1315-16. The proper question is whether the claims provide enough specific limitations to take them out of the realm of abstraction, *i.e.*, "transform" them into eligible claims. By choosing to answer the wrong question, T-Rex has foregone any arguments it might have made on specific claim limitations.

In any event, the timing of the patent applications in this case is beside the point, as it is not seriously debatable that the basic computer functionality of receiving and processing instructions and displaying information that the patents describe in the most general of terms was available at the time. This is made clear by the patents themselves, which discuss the use of computers, networks, and displays available *at the time*, and not some specialized equipment necessary for carrying out the inventions.[3]

T-Rex's second argument is that, "[e]ven if the Court finds that the asserted claims are directed to an abstract idea and that the individual components recited by the claims were conventional in the 1990s, the claims nonetheless recite an unconventional "ordered combination" of elements sufficient to establish patent-eligibility." (Opp. at 12.) According to T-Rex, the meaningful limitations required under *Alice* are "manifested in a concrete combination of devices, interfaces, and software, networked together with physical displays viewable by the target audience, to resolve particular problems." (*Id.* at 13.) This vague assertion, which does not even reference any claims, let alone any specific limitation or limitations within them, plainly

---

[3] There is no "extraneous fact finding" involved in reaching this conclusion where, as here, it is clear that the patent specification itself is describing basic computer functions. *In re TLI*, 823 F.3d at 613; *see also Affinity Labs*, 838 F.3d 1266 at 1270 ("Affinity contends that the magistrate judge improperly engaged in fact-finding when he stated that the idea of delivering media content to a wireless portable device is one of long standing. It is not debatable, however, that the delivery of media content to electronic devices was well known long before the [March 28, 2000] priority date of the '085 patent.").

11

does not suffice to support an argument for inventiveness. *See Affinity Labs*, 838 F.3d 1266 at 1271 (the "inventive concept" step requires "specificity" as to what the claim elements add). Nor does it come close to demonstrating any analogy to the only Federal Circuit case finding an inventive concept based on a combination of elements (*BASCOM*). According to the Federal Circuit:

> The inventive concept described and claimed in the [BASCOM] patent is the installation of a filtering tool at a specific location, remote from the end-users, with customizable filtering features specific to each end user. This design gives the filtering tool both the benefits of a filter on a local computer and the benefits of a filter on the ISP server. . . .
>
> By taking a prior art filter solution (one-size fits-all filter at the ISP server) and making it more dynamic and efficient (providing individualized filtering at the ISP server), the claimed invention represents a 'software-based invention[ ] that improve[s] the performance of the computer system itself.'

*BASCOM Global Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016). Unlike here, *BASCOM* took pre-existing technology and claimed improvements to it by combining the technology with other known techniques. *Compare Elec. Power Grp.*, 2016 U.S. App. LEXIS 13861, at *11 ("The claims at issue do not require any nonconventional computer, network, or display components, or even a 'non-conventional and non-generic arrangement of known, conventional pieces,' but merely call for performance of the claimed information collection, analysis, and display functions 'on a set of generic computer components' and display devices."). Moreover, the *BASCOM* case is in an entirely different context involving a technological field (computers and the internet), not an economic practice, like advertising or other public signage.

**D.      There is no reason to delay finding the claims patent-ineligible until later in the case.**

T-Rex expends considerable effort in an attempt to convince this Court of the inappropriateness of determining patent ineligibility on a motion to dismiss. T-Rex's argument in this regard fails as a matter of law. T-Rex contends that courts "have generally disfavored" dismissing complaints on ineligibility grounds for failure to state a claim, citing the decision in *Proto Labs*. (Opp. at 15.) However, the *Proto Labs* case does not describe patent ineligibility motions to dismiss as "disfavored." Moreover, to Ziosk's knowledge, the Federal Circuit has never held that motions to dismiss are inappropriate vehicles for determining patent ineligibility. Indeed, the Federal Circuit has affirmed patent ineligibility findings on motions to dismiss in numerous cases, including a string of cases over the past few months. *In re TLI*, 823 F.3d 607; *TDE Petroleum Data Solutions, Inc. v. AKM Enter., Inc.*, No. 2016-1004, 2016 U.S. App. LEXIS 14921 (Fed. Cir. Aug. 15, 2016); *Affinity Labs of Texas, LLC v. Amazon.com, Inc.*, 838 F.3d 1253; *cf. Affinity Labs*, 838 F.3d 1266 (affirming judgment on the pleadings of patent ineligibility); *Novo Transforma Techs., LLC v. Sprint Spectrum L.P.*, Nos. 14-612-616, 2015 U.S. Dist. LEXIS 116647 (D. Del. Sept. 2, 2015) (same), *aff'd*, Nos. 2015-2012-2016, -- Fed. Appx. --, 2016 U.S. App. LEXIS 17749 (Fed. Cir. Sept. 23, 2016). In fact, as the district court reiterated in another case disposed of on a motion to dismiss that was affirmed by the Federal Circuit earlier this year, "'failure to recite statutory subject matter is the sort of 'basic deficiency,' that can, and should, 'be exposed at the point of minimum expenditure of time and money by the parties and the court[.]'" Wireless Media, 100 F. Supp. 3d at 411 (quoting Ultramercial, Inc. v. Hulu, LLC, 772 F.3d 709, 719 (Fed. Cir. 2014)).

Plaintiff emphasizes that the Court must infer all facts in T-Rex's favor on a motion to dismiss. (Opp. at 14-15.) True enough. But, while T-Rex contends that certain facts that must be

inferred in its favor preclude granting Ziosk's motion, T-Rex has not shown how those facts (such as the purported novelty of the claimed inventions asserted by T-Rex's declarants) are relevant to any legal issue. To be sure, including declarations in support of a complaint is unusual and a tactic that appears designed to preemptively ward off § 101 challenges. That transparent tactic should not be encouraged and would set a chilling precedent for future cases. Nor should T-Rex's voluminous declarations provide cover for the plain fact that the patents in this case claim patent ineligible subject matter under *Alice* and its progeny.

In sum, T-Rex's protestations notwithstanding, there is no barrier to deciding patent ineligibility in this case on a motion to dismiss. If, however, the Court does decide to deny Ziosk's motion, that determination should be without prejudice. T-Rex's argument for with-prejudice dismissal is unsupported by authority and contrary to the decisions of other courts, including this one. *See Proto Labs*, 2016 U.S. Dist. LEXIS 126784, at *32 (motion denied "without prejudice"); *see also Intellectual Ventures*, 2016 U.S. App. LEXIS 17695, at *32 (affirming post-trial ineligibility rulings); *Iron Gate Sec., Inc. v. Lowe's Cos.*, No. 15-cv-8814 (KBF), 2016 U.S. Dist. LEXIS 101796, at *42 (S.D.N.Y. Aug. 3, 2016) (motion denied but § 101 challenge" may be re-raised "at a later stage").

E.     **T-Rex fails to plead a viable claim for infringement against Ziosk.**

According to T-Rex, the "Complaint, in context, with all of the uncontested facts taken as true, and with all inferences in T-Rex's favor, sets forth at minimum a plausible claim that Ziosk is infringing presumptively-valid patent claims." (Opp. at 14.) A complaint must be dismissed pursuant to Rule 12(b)(6) when a plaintiff fails to plead facts that establish "a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Neither "conclusory allegations" nor "legal conclusions masquerading as factual conclusions" suffice to

14

defeat a motion to dismiss. *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993). Rather, a complaint must contain "enough facts to state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Here, the Complaint does not describe how each relevant claim limitation is found in the accused product. Because T-Rex fails to allege any facts that would allow the Court to infer that the accused product infringes each element of the asserted claims, T-Rex's direct and indirect infringement allegations do not rise to the level of a plausible claim and should be dismissed.

DATED:  December 9, 2016.	Respectfully submitted,

/s/ Samuel E. Joyner
Samuel E. Joyner
  Texas Bar No. 24036865
  sjoyner@ccsb.com
**CARRINGTON, COLEMAN, SLOMAN & BLUMENTHAL, L.L.P.**
901 Main Street, Suite 5500
Dallas, Texas 75202
TELEPHONE: (214) 855-3000
FACSIMILE: (214) 855-1333

**ATTORNEYS FOR DEFENDANT TABLETOP MEDIA, LLC d/b/a ZIOSK**

## CERTIFICATE OF SERVICE

In accordance with Federal Rule of Civil Procedure 5 and Local Rule 5.5(b), the undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document through the Court's CM/ECF system on December 9, 2016.

/s/ Samuel E. Joyner
Samuel E. Joyner

DATED:  December 9, 2016.	Respectfully submitted,

/s/ Samuel E. Joyner
Samuel E. Joyner
  Texas Bar No. 24036865
  sjoyner@ccsb.com
**CARRINGTON, COLEMAN, SLOMAN & BLUMENTHAL, L.L.P.**
901 Main Street, Suite 5500
Dallas, Texas 75202
TELEPHONE: (214) 855-3000
FACSIMILE: (214) 855-1333

**ATTORNEYS FOR DEFENDANT TABLETOP MEDIA, LLC d/b/a ZIOSK**

## CERTIFICATE OF SERVICE

In accordance with Federal Rule of Civil Procedure 5 and Local Rule 5.5(b), the undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document through the Court's CM/ECF system on December 9, 2016.

/s/ Samuel E. Joyner
Samuel E. Joyner